UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| IN RE: | : | CHAPTER 11 |
| | : | |
| ZEROHOLDING, LLC, | : | CASE NO. 22-56502 - JWC |
| | : | |
| DEBTOR. | : | |

**UNITED STATES TRUSTEE'S OBJECTION TO CONFIRMATION
OF DEBTOR'S PLAN OF REORGANIZATION**

Mary Ida Townson, United States Trustee for Region 21, pursuant to the administrative responsibilities imposed by 28 U.S.C. § 586, objects to the Debtor's Plan of Reorganization. The Debtor's Plan of Reorganization includes a provision which improperly grants employees, advisors, attorneys, representatives, financial advisors, investment bankers, or agents and any of such parties' successors and assigns a broad release from any liability for any act or omission in connection with, relating to, or arising out of the Bankruptcy Case, the negotiation and filing of the Plan, the filing of the Bankruptcy Case, the pursuit of confirmation of the Plan, the consummation of the Plan, or the administration of the Plan, except for their willful misconduct. Additionally, the Debtor's Plan of Reorganization fails to demonstrate that it provides a greater return to unsecured creditors than would be available if the case were converted to chapter 7, and Debtor cannot demonstrate that its Plan, as filed, is feasible. Absent additional evidence or amendments sufficient to satisfy the United States Trustee's objections, the Court should deny confirmation of the Debtor's Plan of Reorganization.

**I.    COURSE OF PROCEEDINGS**

1.    On August 19, 2022, Zeroholding, LLC filed a petition under chapter 11 of the Bankruptcy Code and elected to proceed under Subchapter V (Doc. No. 1). Zeroholding, LLC, as

debtor in possession, has all of the rights and powers of a trustee, except those specified in 11 U.S.C. 1106(a)(2-4). 11 U.S.C. § 1184.

2.     On November 17, 2022, the Debtor filed its Plan of Reorganization (Doc. No. 70) (the "Plan").

3.     On January 10, 2023, the Court entered an Order and Notice of Assignment of Hearing on Confirmation of Plan (Doc. No. 80) (the "Confirmation Notice"). The Confirmation Notice set the deadline for filing and serving an objection to the Plan as February 16, 2023.

4.     This objection is filed within the requisite time period and is timely.

## II.     OBJECTIONS TO CONFIRMATION

5.     "To confirm a plan of reorganization, the debtor has burdens as to introduction of evidence and persuasion that each subsection of section 1129(a) has been satisfied. *In re Diplomat Constr., Inc.*, 09-68613-MGD, 2009 WL 6498180, at *2 (Bankr. N.D. Ga. Nov. 20, 2009).

### A. Exculpation and Limitation of Liability Clause

6.     The Plan proposes to pay claims in the case from Debtor's ongoing operations, including a dividend to general unsecured creditors of approximately 9.14%.

7.     Debtor's Plan also confers a broad release from liability to certain individuals and entities:

> *11.4 Exculpation and Limitation of Liability*. Under the Plan, Debtor's current and/or pre-Effective Date employees, advisors, attorneys, representatives, financial advisors, investment bankers, or agents and any of such parties' successors and assigns, shall not have or incur, and shall be released from, any claim, obligation, cause of action, or liability to one another or to any Holder of any Claim or Interest, or any other party-in-interest, or any of their respective agents, employees, representatives, financial advisor, attorney, or any of their successors or assigns, for any act or omission in connection with, relating to, or arising out of the Bankruptcy Case, the negotiation and filing of the Plan, the filing of the Bankruptcy Case, the pursuit of confirmation of the Plan, the consummation of the Plan, or the administration of the Plan, except for their willful misconduct, and in all respects shall be entitled to reasonably rely upon the advice of counsel with respect to their

duties and responsibilities under the Plan. No Holder of any Claim or Interest, or other party in interest, none of their respective agents, employees, representatives, financial advisors, or Affiliates, and no successors or assigns of the foregoing, shall have any right of action against the parties listed in this provision for any act or omission in connection with, relating to, or arising out of the Bankruptcy Case, the pursuit of confirmation of the Plan, the consumption of the Plan, or the administration of the Plan. Fees and expenses which Debtor owes to its Professionals and to the Subchapter V Trustee are excluded from this Exculpation. (Doc. No. 70, Pg. 22).

8. By its express terms, Section 11.4 of the Plan grants a release to Debtor's current and/or post-Filing Date and pre-Effective Date employees, advisors, attorneys, representatives, financial advisors, investment bankers, or agents and any of such parties' successors and assigns (the "Released Parties").

9. Upon confirmation of the Plan, the Released Parties will receive a release from any claim, obligation, cause of action, or liability for *any act or omission* in connection with, relating to, or arising out of the Bankruptcy Case, the negotiation and filing of the Plan, the filing of the Bankruptcy Case, the pursuit of confirmation of the Plan, the consumption of the Plan, or the administration of the Plan, except for their willful misconduct.

10. The Eleventh Circuit has recognized a bankruptcy court's authority, pursuant to 11 U.S.C. § 105(a), to issue a non-debtor release, barring a party from making claims against the non-debtor in certain limited circumstances. *Munford v. Munford (In re Munford, Inc.)*, 97 F.3d 449 (11th Cir. 1996); *SE Prop. Holdings, LLC v. Seaside Eng'g & Surveying (In Re Seaside Eng'g & Surveying)*, 780 F.3d. 1070 (11th Cir. 2015). However, while a bankruptcy court possesses the authority to issue non-debtor releases, such releases "ought not to be issued lightly, and should be reserved for those unusual cases in which such an order is necessary for the success of the reorganization, and only in situations in which such an order is fair and equitable under all the facts and circumstances" *Id.* at 1078-79.

11. To evaluate the propriety of a non-debtor release, the Eleventh Circuit adopted the factors found in *Class Five Nev. Claimants v. Dow Corning Corp. (In re Dow Corning Corp.),* 280 F.3d. 648 (6th Cir. 2002). *Seaside Eng'g & Surveying*, 780 F.3d. at 1079.

> ***When the following seven factors are present***, the bankruptcy court may enjoin a non-consenting creditor's claims against a non-debtor:
> (1) There is an identity of interests between the debtor and the third party, usually an indemnity relationship, such that a suit against the non-debtor is, in essence, a suit against the debtor or will deplete the assets of the estate;
> (2) The non-debtor has contributed substantial assets to the reorganization;
> (3) The injunction is essential to reorganization, namely, the reorganization hinges on the debtor being free from indirect suits against parties who would have indemnity or contribution claims against the debtor;
> (4) The impacted class, or classes, has overwhelmingly voted to accept the plan;
> (5) The plan provides a mechanism to pay for all, or substantially all, of the class or classes affected by the injunction;
> (6) The plan provides an opportunity for those claimants who choose not to settle to recover in full and;
> (7) The bankruptcy court made a record of specific factual findings that support its conclusions.

*Id., quoting Dow Corning Corp.,* 280 F.3d at 658 (emphasis added).

12. The factors should be considered a non-exhaustive list of considerations; the factors should be applied flexibly, always keeping in mind that non-debtor bar orders should only be used "cautiously and infrequently", *Seaside Eng'g & Surveying*, 780 F.3d. at 1079, *quoting Behrmann v. Nat'l Heritage Found., Inc.*, 663 F.3d 704 (4th Cir. 2011).

13. The Court should deny confirmation of the Plan because the factors test laid out in *Dow Corning Corp.* and endorsed for use in the Eleventh Circuit by *Seaside Eng'g & Surveying* indicates that the non-debtor release of the Debtor's employees, advisors, attorneys, representatives, financial advisors, investment bankers, or agents and any of such parties' successors and assigns included in Section 11.4 of the Plan is overly-broad and unnecessary for a successful reorganization of the Debtor.

14. First, there is a lack of continued identity between the Debtor, and its employees, advisors, attorneys, representatives, financial advisors, investment bankers, or agents and any of such parties' successors and assigns. The Debtor's assets have been explicitly defined with the Plan. In contrast, the assets of the Debtor's employees, advisors, attorneys, representatives, financial advisors, investment bankers, or agents and any of such parties' successors and assigns are presumably much broader, and do not substantially relate to these causes of action. As a result, any potential suit against one of the Released Parties is not, "in essence, a suit against the Debtor, or will deplete any assets of the estate" *Dow Corning Corp.,* 280 F. 3d at 658.

15. Second, the Debtor's Plan does not provide a mechanism to pay for all, or substantially all, of the classes affected by the injunction. The Debtor estimates that each general unsecured creditor will receive approximately 9.14% on each allowed claim. No alternative mechanism for recovery of an allowed claim is articulated by the plan.

16. Finally, the Debtor has failed to meet the requisite burden of proof to support the inclusion of a release of the Debtor's employees, advisors, attorneys, representatives, financial advisors, investment bankers, or agents and any of such parties' successors and assigns in Section 11.4 of the Plan, as the Debtor has failed to provide the Court with specific facts on the record, which show the necessity of such extraordinary relief.

17. A non-debtor release, such as the one granted to the Debtor's employees, advisors, attorneys, representatives, financial advisors, investment bankers, or agents and any of such parties' successors and assigns in Section 11.4 of the Plan, requires the presence of all of the applicable factors laid out in *Dow Corning Corp.*, as adopted by *Seaside Eng'g & Surveying*, not merely a minority of them.

18. As a result, the Court should deny confirmation of the Plan.

### B. Debtor's Plan is Not in the Best Interests of Creditors

19. To be confirmable, a chapter 11 plan must provide that each holder of an impaired claim "receive or retain under the plan on account of such claim . . . property of a value, as of the effective date of the plan, that is not less than the amount that such holder would so receive . . . if the debtor were liquidated under chapter 7 . . . on such date." 11 U.S.C. § 1129(a)(7)(A)(ii).

20. "All claimants in a class of claims that is impaired under the proposed plan must be accorded treatment under the plan at least as good as treatment they would receive upon the liquidation of the debtor under Chapter 7." *In re Multiut Corp.*, 449 B.R. 323, 344 (Bankr. N.D. Ill. 2011) (citing *In re Rusty Jones, Inc.* 110 B.R. 362, 373 (Bankr. N.D. Ill. 1990)).

21. "The best interests test applies to individual creditors holding impaired claims, even if the class as a whole votes to accept the plan. *In re Keck, Mahin & Cate*, 241 B.R. 583, 590 (Bankr. N.D. Ill. 1999) (quoting *203 N. LaSalle St. P'ship*, 526 U.S. 434, 442 n. 13 (1999)).

22. The liquidation analysis in the Plan states,

> *1.4 Liquidation Analysis.* Holders of claims would not receive any greater return in a liquidation of Debtor's assets. Moreover, in a liquidation, the Subchapter V Trustee or the chapter 7 trustee would incur costs associated with liquidation, such as auctioneer or other professional fees associated with the administration and sale of the Debtor's assets. The details of a hypothetical liquidation are as follows: After payment to secured creditor Arvest Bank of the value of its collateral as valued in the Plan and payment to Newtek Small Business Finance, LLC as a secured creditor, there would be no recovery for unsecured creditors. Assets disposed of by "liquidation" or "fire" sale generally generate significantly less proceeds than assets that are marketed and sold as a going concern. Additionally, a Chapter 7 trustee would incur trustee's fees pursuant to § 326(a) or § 330 of the Bankruptcy Code. After payment of administrative and priority claims, a Chapter 7 liquidation would result in a far lower recovery to general unsecured creditors than would the payments under the proposed Plan. Through the Plan, Debtor proposes to pay $129,600.00 to unsecured creditors over a 36-month time frame. There is a question as to whether Newtek is a secured creditor in this case. Newtek has raised an issue that they should be equitably subrogated as a secured creditor because their loan was used to payoff multiple secured creditors shortly before the Petition Date. Debtor asserts that this litigation would spill over to a hypothetical Chapter 7.

(Doc. No. 70, Pg. 3).

23. "A liquidation analysis enables creditors to test the proposed plan to see if it meets the requirements of § 1129 and any other requirements personal to the creditor. *In re EBP, Inc.*, 172 B.R. 241, 246 (Bankr. N.D. Ohio 1994).

24. Debtor's assets, according to the Amended Schedules, consist of accounts receivable, vans and equipment, franchise rights, a domain name, a customer list, and potential avoidance actions.

25. The Plan does not provide any evidence as to the value of Debtor's assets, and in fact, does not even make a conclusory allegation of the value of Debtor's assets, instead relying on the statement that "after payment to secured creditor Arvest Bank of the value of its collateral as valued in the Plan and payment to Newtek Small Business Finance, LLC as a secured creditor, there would be no recovery for unsecured creditors."

26. Debtor's statement regarding liquidation of collateral ignores that a secured creditor is only entitled to payment from the liquidation of that creditor's collateral. To the extent the Debtor has assets which are not collateral for a particular creditor, those assets would be liquidated for the benefit of unsecured creditors.

27. Because the liquidation analysis fails to include all Debtor's scheduled assets, the liquidation analysis is insufficient to meet the requirements of section 1129(a)(7). *See In re Multiut Corp.*, 449 B.R. at 345-46 (finding that a liquidation analysis is insufficient if it fails to include all a debtor's assets or provides little basis for the values included in the analysis).

28. As a result, the Court should deny confirmation of the Plan.

### C. Debtor Cannot Demonstrate Its Plan is Feasible

29. Section 1129(a)(11) states that "[c]onfirmation of the plan is not likely to be followed by the liquidation, or the need for further financial reorganization, of the debtor or any successor to the debtor under the plan, unless such liquidation or reorganization is proposed in the plan."

30. "A determination of feasibility must be 'firmly rooted in predictions based on objective fact.'" *In re Diplomat Constr., Inc.,* 09-68613-MGD, 2009 WL 6498180, at *3 (Bankr. N.D. Ga. Nov. 20, 2009) (citing *In re Clarkson*, 767 F2d 417, 420 (8th Cir. 1985)).

31. "Courts consider the earning power of the business, its capital structure, the economic conditions of the business, the continuation of present management, and the efficiency of management in control of the business after confirmation to determine feasibility of the plan. *Id.* (citing *In re Immenhausen Corp.*, 172 B.R. 343, 348 (Bankr. M.D. Fla. 1994)).

32. Debtor has filed monthly operating reports for August (Doc. No. 51), September (Doc. No. 67), October (Doc. No. 72), November (Doc. No. 82), and December 2022 (Doc. No. 92).

33. On February 8, 2023, Debtor amended its monthly operating reports for August (Doc. No. 96), September (Doc. No. 95), October (Doc. No. 94), and November (Doc. No. 93).

34. Each of the monthly operating reports and amended monthly operating reports filed by the Debtor is incomplete and inaccurate.

35. The original monthly operating reports failed to include required exhibits. Specifically, the Debtor did not attach the list of cash receipts, list of cash disbursement, list of post-petition debts incurred but not paid, or list of receivables. While the amended operating

reports include the required exhibits, the information between the exhibits and the report is inconsistent.[1]

36. Additionally, in each of the original monthly operating reports, the Debtor understated monthly disbursements. Post-petition, Debtor's principal, Phillip Miles, has used his personal credit card to pay some of Debtor's expenses.

37. Upon information and belief, from August 19, 2022, to November 30, 2022, Mr. Miles paid $91,118.26 of Debtor's expenses on his personal credit cards. In that same period, Debtor paid $54,500.00 on Mr. Miles' credit card accounts. The only amounts which Debtor included in its calculations of Debtor's disbursements in the original operating reports were the amounts paid to American Express from the Debtor's bank accounts. As a result, Debtor understated its disbursements during the period August 19, 2022 to November 30, 2022 by at least $36,618.26.

38. To the extent the original filed monthly operating reports were used to create Debtor's projected post-confirmation budget, the post-confirmation projections understate Debtor's monthly expenses by approximately $10,000.00 per month.

39. In each of the amended monthly operating reports, Debtor reported significantly lower monthly receipts and monthly disbursements. Based on Debtor's amended monthly operating reports, Debtor averaged gross receipts of $208,445.64 per month during the period September 1, 2022 to December 31, 2022. During the same period, Debtor's monthly disbursements averaged $185,216.01.

---

[1] For example, in each report the Total Payables reported on line 24 differs from the total of unpaid bills listed in the attached Exhibit E.

40. Debtor's projected post-confirmation budget does not appear to be based on Debtor's historical performance during this case, and Debtor should be required to explain the basis for its projections.

41. The Plan also fails to accurately state all amounts which will need to be paid under the Plan. Specifically, the Plan fails to provide an estimate of all administrative expenses, including professionals' fees, which will be due through the effective date of the Plan and which are required to be paid in full on the effective date of the Plan.

42. Without accurate information regarding Debtor's income and expenses, and without identification of the amounts that must be paid in full on the effective date of the plan, Debtor cannot demonstrate the Plan is feasible under section 1129(a)(11).

43. As a result, the Court should deny confirmation of the Plan.

44. The United States Trustee reserves the right to raise additional objections at any hearing on confirmation of the Plan.

[continued on following page]

WHEREFORE, the United States Trustee respectfully requests that the Court sustain the United States Trustee's Objection, deny Confirmation of the Debtor's Proposed Plan of Reorganization, and grant such further relief as the Court deems fair and equitable.

Respectfully submitted this 8th day of February, 2023.

        MARY IDA TOWNSON
        UNITED STATES TRUSTEE
        REGION 21

        By: _____/s/_____
        Lindsay P. S. Kolba
        Georgia Bar No. 541621
        United States Department of Justice
        Office of the United States Trustee
        362 Richard Russell Building
        75 Ted Turner Drive, SW
        Atlanta, Georgia 30303
        (404) 331-4478
        lindsay.p.kolba@usdoj.gov

# CERTIFICATE OF SERVICE

This is to certify that I have on this day electronically filed the foregoing *United States Trustee's Objection to Confirmation of Debtor's Plan of Reorganization* using the Bankruptcy Court's Electronic Case Filing program, which sends a notice of this document and an accompanying link to this document to the following party who has appeared in this case under the Bankruptcy Court's Electronic Case Filing program:

| | |
|---|---|
| Nathaniel DeLoatch | nathanieldeloatch@eversheds-sutherland.us |
| Taylor L. Dove | tdove@huntermaclean.com, aharris@huntermaclean.com, pciolkosz@huntermaclean.com |
| Will B. Geer | wgeer@rlkglaw.com, willgeer@ecf.courtdrive.com, 2836@notices.nextchapterbk.com, swenger@rlkglaw.com, 6717577420@filings.docketbird.com, kmoore@rlkglaw.com, Geer.WillB117921@notify.bestcase.com |
| Alan C. Hochheiser | ahochheiser@mauricewutscher.com, arodriguez@mauricewutscher.com |
| Francesca Macchiaverna | fmacchiaverna@huntermaclean.com, aharris@huntermaclean.com, pciolkosz@huntermaclean.com |
| John G. McCullough | jmccullough@aldridgepite.com |
| Leslie M. Pineyro | lpineyro@joneswalden.com, jwdistribution@joneswalden.com, ljones@joneswalden.com, cmccord@joneswalden.com, arich@joneswalden.com, ewooden@joneswalden.com |
| Caitlyn Powers | cpowers@rlkglaw.com, swenger@rlkglaw.com, yalamin@rlkglaw.com, csmith@rlkglaw.com, 6717577420@filings.docketbird.com, willgeer@ecf.courtdrive.com |
| William A. Rountree | wrountree@rlkglaw.com, swenger@rlkglaw.com, yalamin@rlkglaw.com, 6717577420@filings.docketbird.com, R71213@notify.bestcase.com, csmith@rlkglaw.com, 2836@notices.nextchapterbk.com, willgeer@ecf.courtdrive.com |
| John T. Whaley | trustee@jtwcpa.net, jtwhaley@jtwcpa.net |
| Stuart Wilson-Patton | agbankgeorgia@ag.tn.gov, Stuart.Wilson-Patton@ag.tn.gov |

I further certify that on this day, I caused a copy of this document to be served via United States First Class Mail, with adequate postage prepaid on the following parties at the address shown for each.

Zeroholding, LLC
11175 Cicero Drive, STE 100
Alpharetta, GA 30022

/s/
Lindsay P. S. Kolba
Georgia Bar No. 541621
United States Department of Justice
Office of the United States Trustee
362 Richard B. Russell Building
75 Ted Turner Drive, SW
Atlanta, Georgia 30303
(404) 331-4478
lindsay.p.kolba@usdoj.gov