# UNITED STATES BANKRUPTCY COURT
# NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

| | | |
|---|---|---|
| IN RE: | ) | CHAPTER 11 |
| | ) | |
| Zeroholding, LLC, | ) | CASE NO. 22-56502-jwc |
| | ) | |
| Debtor. | ) | |

### BENCH BRIEF IN SUPPORT OF DEBTOR'S PLAN OF REORGANIZATION

COMES NOW, Zeroholding, LLC ("Debtor"), Debtor-in-Possession, through the undersigned counsel, and file this Bench Brief in Support of Debtor's Second Amended Plan of Reorganization (the "Plan" or "Second Amended Plan"). Debtor will be present at the hearing on Plan Confirmation and can attest to the facts herein.

Prior to the filing of the Second Amended Plan, the U.S. Trustee objected to the Debtor's first amended plan on a number of issues. The Debtor worked diligently to file the Second Amended Plan, which cured the U.S. Trustee's issues and included various other changes based upon agreements with its creditors.

As of the filing of this Brief, the major unresolved issue regarding the Plan is the treatment of Classes 4, 5 and 6, the only entities to object to the Second Amended Plan. April 25, 2023 was the last day for parties to file objections to the Plan, and the only parties to object are in Classes 4 through 6 of the Plan, representing the various merchant cash advance companies that are separately treated under the Plan. Because the unsecured creditors did not vote in favor of the Plan, the Debtor must show that it is committing all of its disposable income to the Plan over a 3-5 year period.

### Introduction

In SubChapter V cases, Section 1191 governs confirmation of the Plan. Section 1191(b) provides that to confirm a Plan, the Debtor must comply with all provisions under Section 1129, with the exception of 11 U.S.C. §§ 1129(a)(8), (10), and (15). Under 1129(a) of the Bankruptcy Code, a plan must be confirmed if:

1) The plan complies with the applicable provisions of title 11 (11 U.S.C. § 1129(a)(1));

2) The proponent of the plan complies with the applicable provisions of title 11 (11 U.S.C. § 1129(a)(2));

3) The plan has been proposed in good faith and not by any means forbidden by law (11 U.S.C.

§ 1129(a)(3));

4) Any payment made or to be made for services or for costs and expenses in, or in connection with, the case or the plan has been approved by, or is subject to the approval of, the court as reasonable (11 U.S.C. § 1129(a)(4));

5) The plan proponent has disclosed the identity and affiliations of any individual proposed to serve as an officer or director of the debtor or a trustee of a trust established under the plan and the appointment to or continuance in such office by such individual is consistent with the interests of creditors and equity security holders and with public policy, and the plan proponents have disclosed the identity of any insider who will be employed or retained by the reorganized debtor and the nature of any compensation for such insider (11 U.S.C. § 1129(a)(5));

6) To the extent that the debtor is subject to the jurisdiction of any regulatory commission, any rate change provided in the plan has been approved by, or is subject to the approval of, such regulatory commission (11 U.S.C. § 1129(a)(6)); This section is not applicable in this case.

7) Each holder of a claim or interest in an impaired class has either accepted the plan or will receive or retain under the plan on account of such claim or interest property of a value, as of the effective date of the plan, that is not less than the amount that such holder would receive or retain if the debtor were liquidated under Chapter 7 (11 U.S.C. § 1129(a)(7));

8) 1129(a)(8) is not applicable in SubChapter.V cases;

9) The treatment of administrative expense and priority claims under the plan complies with the provisions of section 1129(a)(9) (11 U.S.C. § 1129(a)(9));

10) 1129(a)(10) is not applicable in SubChapter V cases;

11) Confirmation of the plan is not likely to be followed by the liquidation or the need for further financial reorganization of the debtor or any successor to the debtor under the plan, unless such liquidation or reorganization is proposed in the plan (11 U.S.C. § 1129(a)(11));

12) The plan provides for payment on or prior to the effective date of all fees payable under 28 U.S.C. § 1930 (11 U.S.C. § 1129(a)(12)); and

13) The plan provides for the continued payment of retiree benefits, as defined in section 1114 of the Bankruptcy Code, for the duration of the period that the debtor has obligated itself to provide such benefits (11 U.S.C. § 1129(a)(13). The Debtor does not provide retirement benefits; therefore, this section does not apply.

14) If the debtor is required by a judicial or administrative order, or by statute, to pay a domestic support obligation, the debtor has paid all amounts payable under such order or such statute for such obligation that first become payable after the date of the filing of the petition.

The Debtor does not owe any domestic support obligations; therefore, this section does not apply.

(A) 1129(a)(15) does not apply in either corporate debtor cases or SubChapter V cases.

**As demonstrated below, the Plan complies with each of the relevant requirements of section 1129(a) of the Bankruptcy Code.**

1. **11 U.S.C. § 1129(a)(1) (Compliance with the Bankruptcy Code)**

Section 1129(a)(1) of the Bankruptcy Code provides that a court may confirm a Chapter 11 plan only if "the plan complies with the applicable provisions of this title." The phrase "applicable provisions" has been interpreted to mean sections 1122 and 1123 of the Bankruptcy Code, which govern the classification of claims and interests and the contents of a Chapter 11 plan. *See* H.R. Rep. No. 95-595, at 412 (1977); S. Rep. No. 95-989, at 126 (1978); *see also Kane Johns-Mansville Corp.*, 843 F.2d 636, 648-49 (2d Cir. 1988); *In re NII Holdings*, 288 B.R. 356, 359-62 (Bankr. D. Del. 2002). As demonstrated below, the Plan complies fully with the requirements of sections 1122 and 1123 of the Bankruptcy Code and, therefore, satisfies section 1129(a)(1) of the Bankruptcy Code. Debtor's principal would testify that the Plan complies with the applicable provisions of this title.

   a. **The Plan Complies with 11 U.S.C. §1122**

Section 1122 of the Bankruptcy Code governs the classification of claims and interests. Section 1122(a) requires that a plan "place a claim or an interest in a particular class only if such claim or interest is substantially similar to the other claims or interests in such class." 11 U.S.C. § 1122(a).

Although the Bankruptcy Code does not define "substantially similar," these words have been interpreted to mean similar in legal character to other claims against a debtor's assets or to other interests of the debtor. *See* 7 Collier on Bankruptcy ¶ 1122.03, at 1122-7 (15th ed. rev. 2002). Section 1122(a) does not require that all substantially similar claims or interests be placed in the same class, but rather that all claims or interests within a class be substantially similar to one another. *See In re LaFayette Hotel P'ship*, 227 B.R. 445, 449 (S.D.N.Y. 1998); *In re 11,111, Inc.*, 117 B.R. 471 (Bankr. D. Minn. 1990). A plan proponent is afforded significant flexibility in classifying claims under section 1122(a) so long as there is a reasonable basis for the classification structure. *See In re Jersey City Med. Ctr.*, 817 F.2d 1055, 1061 (3d Cir. 1987); *In re Drexel Burnham Lambert Group, Inc.*, 138 B.R. 723, 757 (Bankr. S.D.N.Y. 1992), aff'd, 140
B.R. 347 (S.D.N.Y. 1992); *see also In re Commercial W. Fin. Corp.*, 761 F.2d 1329, 1338 (9th Cir. 1985); *In re Holthoff*, 58 B.R. 216, 219 (Bankr. E.D. Ark. 1985) ("Secured creditors with liens in different property or liens in the same property but with different priorities may not be

classified together since their legal rights are not substantially similar.").

Courts also are afforded broad discretion in approving a plan proponent's classification scheme, and may consider the specific facts of each case when making such determination. *See Jersey City Med. Ctr.*, 817 F.2d at 1060-61 ("Congress intended to afford bankruptcy judges broad discretion [under section 1122] to decide the propriety of plans in light of the facts of each case.").

In the present case, the Plan's classification structure is proper and in accordance with section 1122(a) of the Bankruptcy Code. The Plan segregates the various Claims and Interests of Debtor into Classes 1 through 9. Classes 1 through 7 each represent a secured creditor with liens on different collateral or with different priorities on the same property. Class 8 is the separately classified General Unsecured Creditors. A reasonable and justifiable basis exists for each classification under the Plan. The separate classification was not for the purpose of gerrymandering an affirmative vote of an impaired class. *See In re Holywell Corp.*, 913 F.2d. 873, 880 (11th Cir. 1990). All Claims within each Class are substantially similar to the other Claims in each such Class, thus satisfying the express mandate of section 1122. *See Lafayette Hotel P'Ship*, 227 B.R. at 449. Furthermore, no party in interest has objected to the classification structure set forth in the Plan. Therefore, the classification structure set forth in the Plan is proper and satisfies section 1122 of the Bankruptcy Code.

### b. The Plan Complies With 11 U.S.C. § 1123(a)

Section 1123 of the Bankruptcy Code sets forth the mandatory and permissive contents of a Chapter 11 plan. As demonstrated below, the Plan contains each of the mandatory provisions listed in section 1123(a) of the Bankruptcy Code, as well as other provisions permissible under the Bankruptcy Code.

#### i. The Plan Designates Classes of Claims and Interests – 11 U.S.C. §1123(a)(1)

Section 1123(a)(1) of the Bankruptcy Code requires that a plan designate classes of claims and interests, other than claims of a kind specified in sections 507(a)(2) (Administrative Claims), 507(a)(3) (claims arising during the "gap" period in an involuntary case, which is inapplicable here), and 507(a)(8) (Priority Tax Claims) of the Bankruptcy Code. Articles III and IV of the Plan designate the Classes of Claims and Interests. Accordingly, the Plan complies with section 1123(a)(1) of the Bankruptcy Code.

#### ii. The Plan Specifies Unimpaired Classes -- 11 U.S.C. §1123(a)(2)

Section 1123(a)(2) of the Bankruptcy Code requires that a plan "specify any class of claims or interests that is not impaired under the plan." Articles III and IV of the Plan specify the Classes of Claims and Interests that are either impaired or unimpaired under the Plan

within the meaning of section 1124 of the Bankruptcy Code. Accordingly, the Plan complies with the requirements of section 1123(a)(2).

### iii. The Plan Adequately Specifies the Treatment of Impaired Classes – 11 U.S.C. §1123(a)(3)

Section 1123(a)(3) of the Bankruptcy Code requires that a plan "specify the treatment of any class of claims or interests that is impaired under the plan." As discussed above, Articles III and IV of the Plan specifies each Class of Claims and Interests that are impaired under the Plan. Thus, the Plan complies with Section 1123(a)(3) of Bankruptcy Code.

### iv. The Plan Provides for the Same Treatment of Claims or Interests within the Same Class -- 11 U.S.C. § 1123(a)(4)

Pursuant to section 1123(a)(4) of the Bankruptcy Code, a plan must "provide the same treatment for each claim or interest of a particular class unless the holder of a particular claim or interest agrees to a less favorable treatment of such particular claim or interest." Articles III and IV of the Plan detail the treatment for holders of Claims and Interests in each Class, and the treatment within each Class is not disparate among the Class members. Accordingly, the Plan complies with section 1123(a)(4) of the Bankruptcy Code.

### v. The Plan Provides Adequate Means for Its Implementation – 11 U.S.C. § 1123(a)(5)

Section 1123(a)(5) of the Bankruptcy Code requires that a plan "provide adequate means for the plan's implementation" and lists certain examples, such as retention by the debtor of all or any part of the property of the estate; transfer of all or any part of the property of the estate to one or more entities, whether organized before or after the confirmation of such plan; merger or consolidation of the debtor with one or more persons; amendment of the debtor's charter; or cancellation or modification of any indenture or similar instrument. *See* 11 U.S.C. § 1123(a)(5); *see also In re Stuart Glass & Mirror, Inc.*, 71 B.R. 332, 334 (Bankr. S.D. Fla. 1987) (stating that the proper test is whether the plan provides adequate means for its execution, as required by section 1123(a)(5) of the Bankruptcy Code, not whether alternative means might or might not be available).

Article VII of the Plan sets forth the means for implementation of the Plan, including the funding of the Plan through the Debtor's income. The Plan also provides that the SubChapter V Trustee shall be empowered to pursue any Avoidance Actions for the benefit of Class 8 creditors. Accordingly, the Plan complies with section 1123(a)(5) of the Bankruptcy Code.

5

### vi. Sections 1123(a)(6) and (a)(7) are Not Applicable

11 U.S.C. §1123(a)(6) is not applicable to this case because the Debtor is not issuing new nonvoting securities or establishing new management as part of the reorganization.

### c. Section 1123(a)(8) does not apply because this is not an individual debtor.

### d. The Plan Complies With 11 U.S.C. § 1123(b)

Section 1123(b) of the Bankruptcy Code specifies certain permissive provisions that can be included in a Chapter 11 plan. In this respect, the Plan contains certain of the provisions specifically contemplated by section 1123(b), including, among others, (i) the "retention and enforcement by the debtor, by the trustee, or by a representative of the estate appointed for such purpose, of any such claim or interest", 11 U.S.C. § 1123(b)(3)(B), and (ii) "impair or leave unimpaired any class of claims, secured or unsecured, or of interests," 11 U.S.C. § 1123(b)(1). Other provisions of the Plan are permissible pursuant to section 1123(b)(6) of the Bankruptcy Code, which permits a plan to include other provisions not inconsistent with other provisions of the Bankruptcy Code.

### 2. 11 U.S.C. § 1129(a)(2) (Plan Proponent's Compliance with the Bankruptcy Code)

Section 1129(a)(2) of the Bankruptcy Code provides that a court may confirm a plan only if "[t]he proponent of the plan complies with the applicable provisions of this title." The legislative history to section 1129(a)(2) explains that the phrase "applicable provisions of this title" refers to the disclosure and solicitation requirements under sections 1125 and 1126 of the Bankruptcy Code. *See* H.R. Rep. No. 595, at 412 (1977); S. Rep. No. 989, at 126 (1978). SubChapter V debtors are not required to file a Disclosure Statement pursuant to Section 1181(b), and Debtor asserts that the plan proponent has complied with all provisions of this title, including qualifying to be a SubChapter V debtor.

### 3. 11 U.S.C. § 1129(a)(3) (Plan Proposed in Good Faith)

Section 1129(a)(3) of the Bankruptcy Code requires that a plan be "proposed in good faith and not by any means forbidden by law." Although the term "good faith" is left undefined in the Bankruptcy Code, "[w]here the plan is proposed with legitimate and honest purpose to reorganize and has a reasonable hope of success, the good faith requirements of Section 1129(a)(3) are satisfied." *In re McCormick*, 49 F.3d 1524, 1526 (11th Cir. 1995); *see also In re Sun Country Dev., Inc.*, 764 F.2d 406, 408 (5th Cir. 1985); *In re Zenith Elecs. Corp.*, 241 B.R. at 107. Furthermore, the requirement of good faith must be viewed in light of the totality of the circumstances surrounding the proposal of a Chapter 11 plan. *See McCormick*, 49 F.3d at 1526.

In fact, section 1129(a)(3) of the Bankruptcy Code "requires only that the plan's proposal, as opposed to the contents of the plan, be in good faith and in compliance with all nonbankruptcy laws." *In re General Dev. Corp.*, 135 B.R. 1002, 1007 (Bankr. S.D. Fla. 1991) (citations omitted). The Plan was proposed in good faith and not by any means forbidden by law. The Plan has been proposed with the legitimate and honest purpose of reorganizing the Debtor's debts. This is in good faith and consistent with the Bankruptcy Code. Accordingly, the Plan complies with section 1129(a)(3) of the Bankruptcy Code.

### 4. Section 1129(a)(4) (Disclosure of Payments)

Bankruptcy Code Section 1129(a)(4) provides that the Court shall confirm a plan only if "[a]ny payment made or to be made by the proponent, by the debtor, . . . for services or for costs and expenses in or in connection with the case, or in connection with the plan and incident to the case, has been approved by, or is subject to the approval of, the court as reasonable." In other words, the Debtors must disclose to the Court all professional fees and expenses, and such fees and expenses must be subject to Court approval. *See In re Lisanti Foods, Inc.*, 329 B.R. 491, 503 (D.N.J. 2005) ("Pursuant to § 1129(a)(4), a Plan should not be confirmed unless fees and expenses related to the Plan have been approved, or are subject to the approval, of the Bankruptcy Court."); *see also Johns-Manville Corp.*, 68 B.R. at 632 (holding that pursuant to section 1129(a)(4) of the Bankruptcy Code all payments of professional fees which are made from estate assets be subject to Bankruptcy Court review and approval as to their reasonableness).

In the instant case, all professional fees to be paid are subject to approval of the Court; therefore, the Plan complies with this section.

### 5. Section 1129(a)(5)

The plan proponent has disclosed the identity and affiliations of any individual proposed to serve as an officer or director of the debtor or a trustee of a trust established under the plan and the appointment to or continuance in such office by such individual is consistent with the interests of creditors and equity security holders and with public policy, and the plan proponents have disclosed the identity of any insider who will be employed or retained by the reorganized debtor and the nature of any compensation for such insider. 11 U.S.C. § 1129(a)(5).

Here, Phillip Miles is disclosed conspicuously as the Manager of the Debtor and will continue to manage the Debtor moving forward. His salary of $180,000.00 is also disclosed in the Plan; therefore, the Debtor has complied with this section.

### 6. Section 1129(a)(7) (The "Best Interest of Creditors Test")

Bankruptcy Code Section 1129(a)(7) requires that a plan be in the best interests of creditors and equity security holders in impaired classes. Specifically, Section 1129(a)(7) provides:

With respect to each impaired class of claims or interests –

    (A) each holder of a claim or interest of such class –

        (i) has accepted the plan; or

        (ii) will receive or retain under the plan on account of such claim or interest property of a value, as of the effective date of the plan, that is not less than the amount that such holder would so receive or retain if the debtor were liquidated under Chapter 7 of this title on such date; or

    (B) if § 1111(b)(2) of this title applies to the claims of such class, each holder of a claim of such class will receive or retain under the plan on account of such claim property of a value, as of the effective date of the plan, that is not less than the value of such holder's interest in the estate's interest in the property that secures such claims. 11 U.S.C. § 1129(a)(7).

As set forth in the Liquidation Analysis in the Plan, a liquidation of Debtor under Chapter 7 of the Bankruptcy Code would not provide a greater recovery for any holders of Claims against Debtor, nor for any Interests. The Debtor estimates that approximately $108,00.00 worth of vehicles could be sold to satisfy creditors claims, and after taking into account administrative fees, there would be far less for unsecured creditors in a hypothetical liquidation. In this case, Debtor is proposing to pay unsecured creditors $129,600.00, and the SBA's unsecured claim will be paid in full at the end of the relevant 10-year period.

Pursuant to the terms of the Plan, the SubChapter V Trustee shall be empowered to pursue any preference/avoidance actions; and the recovery to unsecured creditors would be the same in Chapter 7 as it would be under Chapter 11. *Kaye v. A.R.E. Distribution (In re Value Music Concepts)*, Nos. 03-61285 Jointly Administered, 04-06194, 04-06195, 04-06199, 04-06205, 4- 06207, 04-06208, 04-06210, 04-06223, 2005 Bankr. LEXIS 1882, at *27 (Bankr. N.D. Ga. Aug. 22, 2005).

Accordingly, section 1129(a)(7) of the Bankruptcy Code has been satisfied.

### 7. Section 1129(a)(9) (Priority and Administrative Claims)

Section 1129(a)(9) of the Bankruptcy Code requires that persons holding claims entitled to priority receive specified cash payments under the plan. There are no administrative claims, other than attorneys' fees to be paid, and the Debtors' have the means and capability of paying all outstanding fees as of the effective date of the plan. The Tennessee Department of Revenue has filed two claims in this case that have been satisfied. *See Docket Nos. 127 and 77*. The IRS has amended its proof of claim to $0.00. Debtor is unaware of any other priority claims.

8

### 8. Section 1129(a)(11) (Feasibility)

Section 1129(a)(11) of the Bankruptcy Code provides that a court may confirm a plan only if "[c]onfirmation of the plan is not likely to be followed by the liquidation, or the need for further financial reorganization, of the debtor or any successor to the debtor under the plan, unless such liquidation or reorganization is proposed in the plan." The feasibility test set forth in section 1129(a)(11) of the Bankruptcy Code requires the Bankruptcy Court to determine whether a plan is workable, and has a reasonable likelihood of success. The Bankruptcy Court should look to whether the debtor can realistically carry out provisions of the plan and whether the plan offers reasonable prospects of success. *See In re IPC Atlanta Ltd. P'Ship*, 142 B.R. 547, 559-60 (Bankr. N.D. Ga. 1992). Feasibility does not, nor can it, require the certainty that the plan will succeed. *Id.*; *see, e.g. Johns-Mansville Corp.*, 843 F.2d at 649; *In re Clarkson*, 767 F.2d 417, 420 (8th Cir. 1985); *In re Pike's Peak Water Co.*, 779 F.2d 1456, 1460 (10th Cir. 1985); *In re Lakeside Global II, Ltd.*, 116 B.R. 499, 506 (Bankr. S.D. Tex. 1989).

"To establish feasibility, the debtor must present proof through reasonable projections, which are not speculative, conjectural or unrealistic, that there will be sufficient cash flow to fund the plan." *In re Leslie Fay Cos.*, 207 B.R. 764, 789 (Bankr. S.D.N.Y. 1997). Just as speculative prospects of success cannot sustain a finding of feasibility, **speculative prospects of failure cannot defeat a finding of feasibility**. *See IP Atlanta Ltd. P'Ship*, 142 B.R. at 559.

In this case, the Debtor attached as Exhibit "A" to the Plan a projected income and expense statement based upon the schedules filed by the Debtor and the monthly operating reports and estimates moving forward. Naturally, these numbers will fluctuate based upon sales, repairs, and other unforeseen factors in any business; however, an average can be discerned and used for this analysis. From this analysis, the Debtor has shown that the income of the Debtor is sufficient to support the Plan payments.

The Plan provides that Mr. Miles' salary will be used to make up for any short-fall in Plan payments, including administrative fees, including Debtor's attorneys' fees and the SubChapter V Trustee's fees.

Pursuant to the operating reports, including April of 2023, the Debtor's average monthly profit, without accounting for projected Plan payments, is $11,447.83. The Debtor's projections call for an approximate net income, before plan payments, of $12,800.00 to $13,900.00 per month to make the Plan payments. To the extent the Debtor needs to make up any difference to ensure that Plan payments are made, the Plan provides that Mr. Miles' salary shall be used. Mr. Miles' monthly salary is $15,000.00/month, which provides more than enough cushion to pay the Plan payments.

Accordingly, the Debtor has established that confirmation of the Plan is not likely to be followed by the need for further reorganization of Debtor, and the Plan meets the standards

of section 1129(a)(11) of the Bankruptcy Code.

### 9. Section 1129(a)(12) (Fees)

Section 1129(a)(12) of the Bankruptcy Code provides that a court may confirm a plan only if "[a]ll fees payable under § 1930 of Title 28, as determined by the court at the hearing on confirmation of the Plan, have been paid or the plan provides for the payment of all such fees on the effective date of the plan." SubChapter V Debtors are not required to pay fees to the U.S. Trustee, and the only other fee contemplated by this code section applicable to this Debtor is the Chapter 11 filing fee, which was paid at the case's inception.

### 10. Sections 1129(a)(13), (a)(14), and (a)(15) do not apply.

### 11. Section 1191(b)

All requirements of section 1191(b) of the Bankruptcy Code have been satisfied. Pursuant to section 1191(b) of the Bankruptcy Code, if all of the applicable requirements of section 1129(a) of this title, other than paragraphs (8), (10), and (15) of that section, are met with respect to a plan, the court, on request of the debtor, shall confirm the plan notwithstanding the requirements of such paragraphs if the plan does not discriminate unfairly, and is fair and equitable, with respect to each class of claims or interests that is impaired under, and has not accepted, the plan.

The Plan does not discriminate unfairly and is fair and equitable with respect to the holders of Claims in the Classes that have not accepted the Plan.

Classes 4, 5, and 6, representing the various "MCA" creditors, have not accepted the Plan. The Debtor has filed objections to the claims in Classes 4 and 5 in their entirety and provided for a contingency that their claims shall be paid in full if they are determined to be secured creditors. If their claims are unsecured, they shall be treated as a Class 8 creditor, and neither objecting party objected to the payment structure delineated in Class 8 of the Plan.

The Debtor has also filed an adversary proceeding against the Class 6 claim holder. If the Class 6 claimant prevails, its claim will be paid in full. If the Debtor prevails, its claim will be treated as an unsecured claim to the extent it is allowed, and the Class 6 claimant failed to object to its proposed treatment if the Court determines it is an unsecured creditor.

### 12. 1191(b) as to Class 8

Section 1191(b) also provides that as of the effective date of the Plan –

(A) the plan provides that all of the projected disposable income of the debtor to be

received in the 3-year period, or such longer period not to exceed 5 years as the court may fix, beginning on the date that the first payment is due under the plan will be applied to make payments under the plan; or

(B) the value of the property to be distributed under the plan in the 3-year period, or such longer period not to exceed 5 years as the court may fix, beginning on the date on which the first distribution is due under the plan is not less than the projected disposable income of the debtor.

In this case, the Debtor is providing to pay its unsecured creditors an average of $2,700/month ($10,800.00 per quarter) for a total of $129,600.00 over 4 years. Going by Debtor's projections attached to its Plan, the average monthly income after payment of secured claims for the 24 months post-confirmation is estimated to be $2,312.75. The monthly operating reports show that the Debtor would have to potentially take from Mr. Miles' salary to make its obligations; therefore, the Debtor has satisfied Section 1191(b)'s requirement that all the Debtor's disposable income is being committed to the Plan.

WHEREBY, the Debtor respectfully requests this Court confirm Debtor's Second Amended Plan.

Respectfully submitted this 3rd of May, 2023.

**Rountree, Leitman, Klein & Geer, LLC**

/s/ *Will B. Geer*
Will B. Geer
Georgia Bar No. 940493
Attorney for Debtor
2987 Clairmont Road, Suite 350
Atlanta, Georgia 30329
(404) 584-1283
Email: wgeer@rlkglaw.com